Good morning. Good morning, Your Honors. My name is Nancy Minkler, and I represent Appellant Tania Johns. I'd like to reserve about three minutes for rebuttal. Ms. Johns is requesting a reversal of District Court Judge Mendez's summary judgment rulings on her claims of discrimination. The district court's rulings were based on a finding of no evidence of discrimination, but the moment Ms. Johns broke her neck, employees at the Postal Service waged a campaign of discrimination against her because they did not want to deal with her and her disability. The campaign began as soon as she broke her neck and her supervisor tried to dissuade her from applying for FMLA leave and then fired her. The campaign culminated with a complete shutdown of communication during the last five months of her employment. The Postal Service's treatment of Ms. Johns was a blatant violation of her rights under the Rehabilitation Act. The Postal Service doesn't dispute any of the evidence of discrimination presented by Ms. Johns, but the district court nonetheless found that no reasonable jury would be able to find that the Postal Service had discriminated against her. The evidence presented by Ms. Johns of discrimination was so compelling that no reasonable jury could have found that the Postal Service didn't discriminate against her. At a minimum, however, the district court misapplied the summary judgment standard in failing to view the evidence in the light most favorable to her and awarding summary judgment to Ms. Johns. To address the issue of what kind of accommodation would have been able, what could have been offered that would have addressed your client's disabilities at the time and yet fulfilled the rehabilitation obligations and accommodation obligations of the Post Office. There are two possible accommodations. The first is an extended unpaid leave with a guarantee to return to work. This was denied to her because she was constructively discharged. The second is a return to work to box mail with accommodations. And the Postal Service never responded to that request. To further address the constructive discharge claim. Yeah, that's an important one at least for me. Usually when we see a valid constructive discharge, there's some really outrageous continuous kind of conduct and it at least appeared, I will need to talk about with the other side, but it seems like they didn't contact her a little bit and then she just said I'm, you know, I'm quitting. I'm done. That seemed to surprise people. Would you comment on that please? Yes, Your Honor. The discrimination actually, it took place over 15 months. It began with her initial termination. Actually, let me back up. It began with her supervisor trying to terminate her. And then prior to her initial termination, the Postal Service never discussed possible reasonable accommodations with her. Okay, let's even assume I agree with you about that. In terms of the constructive discharge, if you will, can you cite any case where someone was constructively discharged and in effect forced to resign where you have facts like this or anything close to this? Yes, Your Honor. Sanchez v. City of Santa Ana is very similar to this case. In Sanchez, the Ninth Court upheld a constructive discharge where an employee quit after his merit pay increases were removed without due process while he was on medical leave and his attempts to invoke the grievance procedure were not met with a response. So that case is very similar to this case. And you say the court found constructive discharge? It upheld a constructive discharge. Yes, Your Honor. But aside from whether there was sufficient evidence to constitute, for purposes of the motion at least, a constructive discharge, you've got a separate issue with regard to whether constructive discharge is properly raised in the administrative proceedings, right? Your Honor, I do. And the District Court's judgment was in error on this case, on that issue of failure to exhaust administrative remedies. The Postal Service has not identified any issues that would have investigated had Ms. Johns specifically identified constructive discharge in her interrogatory responses. The purpose of the administrative exhaustion process is to give notice of a claim to an employer and an opportunity to investigate. That purpose was fulfilled in this case. The Postal Service should therefore not be able to use the administrative exhaustion requirement to limit Ms. Johns' ability to pursue The District Court erred in ruling that that was not a possible accommodation. It improperly weighed the facts on that issue. Under Humphrey v. Memorial Hospitals Association, when an employee... Actually, first let me back up. There were a number of issues of material fact with regard to the boxing mail accommodation. First, would someone placing the bins of mail by the boxes have been an unreasonable burden for the Postal Service? How many of these larger packages needed to go out to the lockers? Would it have been an unreasonable burden to have somebody else do that for Ms. Johns? Would Ms. Johns have been able to box mail without twisting her torso? The Postal Service claims now that boxing mail wouldn't have been possible, but this latent claim is not sufficient to allow it to avoid liability because it made this determination only in the context of the summary judgment motion years after Ms. Johns made the proposal. If that approach were permitted under the law, then any employer could avoid liability by simply ignoring an employee's proposal for accommodation, waiting for her to get so frustrated that she quits, and then saying after the fact, well, that wouldn't have worked anyway. And under Humphrey v. Memorial Hospitals, when an employee presents an proposal without providing an alternative, that employer is liable for failure to engage in the interactive process. That's exactly what happened here. Ms. Johns proposed boxing mail as an accommodation. This was an accommodation that her former supervisor testified had been made before for other employees, and the Postal Service didn't even bother to respond to Ms. Johns. There's no way to read its refusal to respond to her other than, we don't want to deal with you and your disability, and we don't want you back. The Postal Service has touted Ms. Johns' unpaid leave as evidence that it provided the ultimate accommodation for her, and it therefore can't be liable for failure to engage in the interactive process. Counsel, following up on what Judge Pearsall inquired about in terms of administratively exhausting this issue, there was an interrogatory that was sent to you, and in that response, you didn't mention or note the lack of communication, either the constructive discharge or lack of communication, when you did the interrogatory response. How would the Postal Service have been put on notice to investigate the charge under those circumstances? Your Honor, the interrogatory responses could have been better. The information provided during the administrative process could have been better, but that's true of all the cases cited by appellant in her briefs in which a plaintiff was allowed to proceed with a claim despite a less-than-perfect administrative complaint. She was represented, wasn't she, at that point? She was represented, Your Honor, but the issue that these cases turn on is whether notice was provided to an appellant, whether there was opportunity to investigate, and that happened here. All the incidents that Ms. Johns relies on for her constructive discharge claim were identified and investigated during the administrative process, and Ms. Johns . . . By the Service. By the Service, yes, and Ms. Johns's resignation letter, she submitted it during the administrative process, and in that letter, she says, the Postal Service has shown reckless disregard for my civil rights, and I am therefore forced to resign. That's notice of the claim. She didn't use the, you know, the legal term of our constructive discharge, but she gave them notice. I'd like to point the court to Moore v. Chemtronics. That's a case cited in Appellant's reply brief, and in that case, the claimant made a similar mistake to Ms. Johns. The claimant in that case was pursuing a denial-of-family-leave claim, but failed to identify that claim during the administrative process, despite the fact that the DFEH complaint form has a specific box that is for denial-of-family-leave, and that's what happened. Could you address how the accommodation letter, letting her work at the Postal Office when she had the physical limitations, how that would have worked out? Yes, Your Honor. What she had proposed was that, so prior to her breaking her neck, she basically held two different jobs. She was the sole postmaster at a very small post office at Amador City, but then she spent 15 to 20 hours a week at the Sutter Creek Post Office, where she was not the only employee, and when she worked there, what she did was to box mail. So that's putting mail into the post office. So what she was requesting was that the bins of mail are broken down into, like, where the mail goes into, like, rough sections. So she was requesting that the bins would be put near those boxes. She could box the packages would be taken out by somebody else to the to the lockers. That was her request. But the Postal Service never responded to this request. They might point to a meeting that the District Reasonable Accommodations Committee held after her constructive discharge, but in that meeting, they didn't even discuss this request. They discussed whether Ms. Johns could have returned to her job, to as a clerk. So that's doing all the duties. Ms. Johns never claimed that she could perform all duties. She had just proposed that she would box mail prior to her full recovery. I see that I have about two minutes. Sure, save that if you like. All right, let's hear from the post office. No doubt that you will deliver. May it please the Court. Victoria Bush on behalf of the Postmaster General. Turning first to the interactive process claim, as this Court recently observed in the Snap case, there is no standalone claim for failure to engage in the interactive process. What the claim is, is a failure to accommodate claim. The claimant says, because the interactive process failed, I did not receive a reasonable accommodation that was available. And so the key here is the availability of a reasonable accommodation. The interactive process here worked. Ms. Johns received the reasonable accommodation that she identified in her interactive process questionnaire as what she needed to return to work, which was leave to allow her to heal from her injuries. And even if one found that there was a breakdown later in the process, the claim fails because the undisputed evidence shows there was no reasonable accommodation available here that she was not provided. Well, isn't that something of a leap, though, for the trial judge to make that conclusion? No, Your Honor, and the reason is that the undisputed evidence in the record shows that there was no reasonable accommodation available that she didn't receive. Everyone agrees, it is undisputed, that Ms. Johns could not perform her actual job, which was working as a postmaster relief at the Amador City Post Office, within her restrictions. That's at year 92. But there was some evidence, I thought, from some witness that when people had limitations that they had accommodated and helped them out, handling the heavier packages, for example. So that evidence is one sentence in a deposition where a postmaster said, well, sometimes if somebody came in, they tweaked their back, maybe we'd move a bin for them. It had — it did not cover a situation like this, where she had a doctor-imposed restriction. She was prohibited from twisting her torso and prohibited from lifting over 10 pounds by a medical professional who said that that would harm her. It's very different to say that a person with those doctor-imposed restrictions could safely perform the functions here. What we've been talking about is boxing mail, because that's what she identified. Now — Why would it work — why wouldn't what counsel said when we asked that question about how she could do the Southern Creek boxing by having the boxes close to the boxes so that she didn't have to twist or lift? Yeah, there are three reasons why that would not work, Your Honor. The first is the undisputed evidence in the record shows that boxing mail requires constant reaching, stooping, and turning, and frequent turning of the torso. That's at SER 318 and 319. She could not do that with her doctor-imposed restrictions, an absolute prohibition on twisting her torso at all, and a lift over. That's the job description. How do we know you couldn't accommodate it? So that's not just the job description. That is the evidence in the record from someone with and there is no contrary evidence. There's no evidence in the record that anyone had ever boxed mail at the post office without turning their torso, Your Honor. The undisputed evidence is that turning the torso is required. I think you're sensing that all of us are struggling with one aspect of this, and that is that this was decided on summary judgment, and you've got a situation here where Ms. Johns, according to what I see here, repeatedly tried to get an interaction with one or more people, and she was ignored. I don't know whether that's true or not. I'm just saying that's what an allegation is. You have the contention that she was not given an opportunity to perform the boxing that we talked about, but the issue is who gets to decide this? The district judge decided it, and the question is, is there a material issue of disputed fact? And that's what I'm struggling with, frankly. I don't know how the district judge made this decision, basically acted as the trier of fact. Your Honor, the undisputed evidence shows what boxing mail requires. There's no contrary evidence, and this court has held that an employer is not required to reallocate essential functions of a job. That's at Dark v. Curry, 451 F3rd, 1078 at 1089, cited in the SNAP case. From your perspective, there's no evidence contrary to that. So even if there is a dispute about whether or not they refused to engage in the interactive process, even if they had, they couldn't have done anything. Right. Now you do have this paid leave concept. Yes, and she was given paid leave, and the undisputed evidence shows that that leave would have continued if she had not resigned. The only reason it ended was because she resigned her position. Well, then doesn't that make the constructive discharge then intertwined with the failure to accommodate? That is why she's asserting constructive discharge, Your Honor, because she needs that in order to hold on to the claim, yes. Unfortunately, the constructive discharge claim – well, actually, let me make two more points about boxing mail, and then I'll move on to constructive discharge. She claims in reply that she could have boxed mail, she could have turned her body without twisting her torso, by only moving her feet. She cites no record evidence to support that, and there is none. All the evidence refutes it. She had broken her to put her foot on and a medical knee walker to walk around. With respect, counsel, you're deciding that what she said she could do is wrong. Now, you may be correct about that, but it's the judge who made the decision, not another trier of fact. No, Your Honor, all the evidence supports that. That's what summary judgment is. She said she could do it. That's evidence, right? It may be wrong, but that's what she said she could do. She doesn't – she does not explain how she could possibly have – so if I can finish the point, with a broken ankle and one foot off the ground, you can't use your feet to turn your body. That's just argument, and there's no evidence. She didn't even say that. It's still evidence, though. Well, she submitted no evidence to the court to that effect. So there was no evidence before the court that anybody had ever boxed mail without twisting their torso or that she could have done so. In addition, if I'm – But she said that – I thought that she submitted that she could do that with some accommodation, and then there wasn't any back and forth with regard to whether that could be the case or not. That's the other problem with the case. So she said she raised the issue, but respectfully, Your Honor, that's why I began with saying there's no standalone claim for failure to engage in the interactive process. The key is that there's got to be an available, reasonable accommodation, a reasonable accommodation that could have been given. And the undisputed evidence here shows that there wasn't such an accommodation. Well, let me say what I'm wrestling with. You agree that one of the possible accommodations was to continue to pay her when she wasn't working because of her disability. She claimed that she made numerous attempts to interact with the department. There's certainly evidence to that effect. So she says that she ultimately quit because she was so frustrated. She couldn't get anybody to respond. So it's almost a circular argument. So that takes us – You know, if she couldn't get them to communicate, she was being paid. That got cut off because she quit, but she quit because they wouldn't communicate. It's kind of this sort of thing. So two things. It was unpaid leave that was given to her as an accommodation. I just want to make sure – make that clarification. I understand what you're saying. And that moves me to the constructive discharge piece. Let's go back, though, for a minute to the fact that they have an interactive process requirement. And if they would have engaged in the interactive process, then there would at least be a more complete record with regard to whether she could or couldn't do that or whatever else you were offering. But that process didn't happen. So they did engage extensively with her, Your Honor, which I think is important on the issue of good faith here. When her – you know, she talked about a campaign of discrimination. There's nothing in the record to support anything like that. She was mistakenly terminated because a computer had denied her FMLA leave. When they realized that error, they reinstated her. They sent her a letter saying, please come and take part in our reasonable accommodation process. Here's a brochure explaining about reasonable accommodations. Here's a questionnaire for you to tell us what you need. She sent that in. They sent her letters. They had a phone meeting with her. It is true that there's one postal nurse who she'd been sending medical updates to. But she called five times. Who she called on two different days. She sent – she left one message in January of 2015, and then she left three messages on one day in February of 2015. And it is true that her – So if you do three in one day, it doesn't count? Well, it's – Your Honor, respectfully, you know, sometimes people don't always return phone calls. And that's regrettable. And, you know, not ideal. But not a reason to impose a great deal of liability on an employer. And not an intolerably hostile condition that compels someone to resign. Particularly not someone who has, on seven occasions in writing, been provided a number for the District Reasonable Accommodation Committee that she should call. And the last two times she received that number, it told her, please call DRAC if you – call this number. Call us if you want to have a meeting with us about a reasonable accommodation. Call us if you want to discuss reasonable – that's at SER 206 and 208. Let me – So she had an option. Let's assume arguendo. That you're right about constructive discharge. There just wasn't enough to meet the standards. But let's say also that there's some evidence that she was not provided a reasonable accommodation. I know you disagree with that. Just say arguendo there. There was that evidence. You can still send that back to deal with the reasonable accommodation issue, even though you may or may not agree with the constructive discharge, correct? Well, the question is, the constructive discharge cuts off whatever issue we're talking about at her resignation. Because it was a voluntary resignation. I get that point. I guess what I'm trying to say is, if – arguendo, we don't find that she had grounds to quit, basically. But before that time, if we find that there was certainly evidence that she was not provided a reasonable accommodation, we can reverse on that issue alone, though, and send it back to determine whether she had a reasonable accommodation, correct? The two issues are separate. However, the undisputed evidence is that she received more than 10 months of leave after her FMLA leave expired, and that that leave was what she'd asked for. I'm just saying, if we disagreed with what you say, we could still send back the reasonable accommodation issue without necessarily accepting Ms. John's contention that she was entitled, if you will, to claim constructive discharge. Yes, Your Honor, the issues are separate. I agree with you. On the – on the reasonable accommodation point, if I may return to one separate point, there's a third reason why boxing mail is not a reasonable accommodation here, and that is that the undisputed evidence demonstrates – so let me back up. She worked as a postmaster relief at a small post office called the Amateur City Post Office. And then when she was working, she picked up extra hours helping when help was needed at the Sutter Creek Post Office. She was a nonunion employee, and at the time she did that, that was permissible. However, the time period at issue here is very narrow. It's January of 2015 to April of 2015. That's the time during which she is alleging she could have had an additional reasonable accommodation, in addition to leave. And during that time, allowing Ms. John's to box mail at the Sutter Creek Post Office would have required the Postal Service to violate the union contract then in place, which said that that task could only be done by union employees. And to require an employer to violate a union contract renders a proposed accommodation unreasonable. Isn't there a counter to that saying that, well, that there could be exploration of her picking up hours at other facilities other than that? So that's a good point, Your Honor. However, all the nearby facilities had union contracts that would prevent the Postal Service from doing that. You can find that at SER 212 and 320. So the undisputed evidence is that this boxing mail reasonable accommodation was not available. And an interactive process claim, which is actually a failure to accommodate claim, must fail if there is not evidence to support the idea that there was a reasonable accommodation available that was not provided. What's the record for the contract? The site in the record. I've already found that union contract. The contract itself does not appear in the record. There are affidavits from postal employees that explain that there was a union contract then in place and that it precluded any non-union employee from doing clerk work like boxing mail at this time. There's no contrary evidence, Your Honor. So no, there's no other evidence in the record. Other questions by my colleague? No. You're almost out. You've got 10 more seconds if you want, but if you don't need, you don't have to. Thank you very much, Your Honor. Thank you very much for your presentation. I appreciate it. So we have a little rebuttal time. Thank you, Your Honor. I would like to address that last issue of the union contract. So there are factual disputes about this issue because the evidence indicates that it's likely that Ms. Johns could have been converted from a non-union PMR position to a union PSE position. So first, there is the fact that the job duties of both positions were the same. You have Ms. Johns' testimony to support this at ER 176. And then you also have the Postal Service. Let me be sure I understand. Are you saying that she could have been converted into a union member as part of the accommodation? Yes, Your Honor. Just a few months prior to breaking her neck, she actually was in a union position. And yes. So those positions are as far as job duties go. The PMR non-union position is the same as a union PSE position. So you have the Postal Service Counsel in her letter of July 8, 2015. This is at SER 279 to 287. She actually refers to those jobs as one and the same. So she refers to the job description for a union distribution clerk as being the same as the non-union PMR position. Then you have the fact that the Postal Service never raised this issue. So that position, Ms. Johns' position changed from a non-union PMR position to a PSE position in approximately November or December of 2014. That's according to Supervisor Mary Fine's deposition testimony. And the Postal Service never addresses this issue in its, you know, subsequent meetings about whether reasonable accommodation was available for Ms. Johns. They never tell her in communications to her after she's constructively discharged. Well, you couldn't come back anyway because we changed the position. Your time is up. Let me ask my colleagues if either has any additional questions. No, thank you. Do you have any, Ray? No. Okay. Thank you very much. Thanks to both counsel for your arguments. It's been very helpful. The case just argued is submitted and the court stands in recess for the day.
judges: Fisher, M. Smith, Piersol